This is a divorce case.
The wife, plaintiff below, appeals from the trial court's division of property and award of periodic alimony.
The record reveals the following:
Appellant-wife was 20 years of age and appellee-husband was 23 years of age when the parties were married in 1954. They had been married 22 years at the time of trial.
The parties lived together in Mobile from 1964 until the time of their separation in 1975, when the wife returned to her home town of Denver, Colorado, to live. The husband continued to reside at the parties' home on Marquette Drive in Mobile.
The husband is the principal stockholder of Gulf States Beauty Supply Company, Inc., owning approximately 85% of the stock of this business. Exhibits introduced by the wife disclose gross sales for the business were slightly in excess of $1,000,-000 in both 1974 and 1975. The sum profit for the business in both years was approximately $4,000.
The parties' income tax returns revealed the husband's average annual income for the three years preceding the divorce to be approximately $36,000. Of this amount, $21,000 consisted of wages and $7,000 was office rental fees, both paid by Gulf States Beauty. The remainder of the $36,000 was attributed to investment income and the sale of various investment properties.
A personal financial statement of the husband dated June 1, 1976, valued the husband's assets at $375,000. Total liabilities were $96,000. Thus, his total net worth was $279,000.
Viewing the evidence with the attendant presumption of correctness, the husband's assets consisted of $3,000 cash, $46,000 marketable securities, $179,000 nonmarketable securities, $105,000 real estate, and $22,000 in real estate equities of which he was a partial owner. The remaining $20,000 consisted of $15,000 in automobiles and personal property and $5,000 cash value of life insurance. The $105,000 in real estate included business property which Gulf States Beauty leased from him and the parties' home. The business property was valued at $40,000.
The wife estimated the value of the parties' residence at $80,000. At the time of trial, $28,000 remained to be paid on the mortgage.
The parties have three children. Cynthia, a graduate of the University of Tennessee, was employed by an accountant and lived with her father, appellee herein, at the house on Marquette Drive at the time of trial. Brian, who was 18, had just begun attending the University of Colorado in Boulder. Teddy, 11, was in Denver with his mother, appellant herein. *Page 54 
The wife had completed three and one-half years of college prior to the marriage. She had not been employed since the couple's marriage except occasionally at Gulf States Beauty. She stated that she had a learning disability; that she had had two nervous breakdowns in previous years; and that she was still taking medication for her nervous condition.
She also testified that she had no separate estate of her own; that she needed approximately $2,700 per month for living expenses in Denver; and that she eventually hoped to obtain employment as a therapist to persons with learning disabilities. Her debts at the time of trial totaled $6,400.
The husband, defendant below, stated that he was sending his son, Brian, to the University of Colorado at a cost of approximately $2,500-$4,800 annually.
Both parties stated there was no chance of reconciliation between them.
In December, 1976, the trial court granted the divorce sought by the wife and awarded to her custody of the 11 year old son. The court divided the personal property between the parties and ordered the husband to make the following payments: $200 per month periodic alimony; $450 per month child support payments for the minor child; $1,350 for the wife's $6,400 in debts; $2,500 for the wife's attorney's fees; and court costs.
Additionally, the decree required the husband to pay to the wife as alimony in gross the sum of $80,000 over a period of ten and one-half years. The wife was ordered to convey to the husband her interest in the residence located on Marquette Drive in Mobile. The husband retained title to the marketable and nonmarketable securities and the business properties.
The court decree recognized that the husband was paying the university expenses for one of the parties' children and also made the husband liable for any "extraordinary medical and dental expenses" for the minor child.
As previously stated, the wife contends the trial court erred to reversal in its division of property and in its award of periodic alimony.
She recognizes that there is no fixed standard for determining the proper amount of periodic alimony to be awarded and that future prospects of the parties, their ages, sex, health and station in life are appropriate factors to be considered in fixing the amount of alimony payments. See Segarsv. Segars, Ala.Civ.App., 334 So.2d 684 (1976). She contends that evaluation of the preceding factors, in conjunction with her testimony stating a need of $2,700 per month, compels a conclusion that the trial court erred in ordering the husband to pay $200 per month as periodic alimony. We disagree.
It is readily apparent that the trial court recognized the husband's limited ability to pay in establishing the amount of periodic alimony to be paid to the wife. We have previously indicated such a factor to be an appropriate consideration.Phillips v. Phillips, Ala.Civ.App., 344 So.2d 786 (1977); Caprav. Capra, 56 Ala. App. 90, 319 So.2d 286 (1975).
One reasonable view of the evidence fixes the husband's annual income, without requiring liquidation of his business assets, at $28,000; $21,000 wages, and $7,000 rental income. Reduction of this $28,000 by $7,800, the amount of annual child support and periodic alimony payments, and an additional $2,500, the minimum amount the husband indicated he will have to provide annually for one child's education expenses, reduces the husband's income by more than one-third. The husband, in addition to making the aforementioned payments, must also amass sufficient funds to meet the property settlement payments of nearly $8,000 annually.
Awards of periodic alimony in a divorce case are within the sound discretion of the trial court and will not be reversed on appeal absent the showing of a manifest abuse of that discretion. Novak v. Novak, Ala.Civ.App., 339 So.2d 77 (1976);Banks v. Banks, Ala.Civ.App., 336 So.2d 1365 (1976). The facts of this case disclose no such abuse of discretion. *Page 55 
The wife also contends the trial court erred to reversal in its division of property. She states that since the $80,000 is to be paid to her over a period of ten and one-half years, the present value of this sum is far less than $80,000. She states that the husband will be able to invest the unpaid portion of this $80,000 and use the returns therefrom to pay a substantial portion of the alimony in gross she is to receive in subsequent years. Hence, she concludes, there is a larger disparity in the property division than the difference between $279,-000, the husband's net worth as of June 1, 1976, and the $80,000 awarded to her indicates.
We cannot accept this contention. Such an argument assumes the existence of a greater sum of liquid assets available for investment than is here present and also ignores the tax consequences likely to result from the sale of assets by the husband.
A division of property by the trial court in a divorce decree is subject to reversal only if plainly and palpably erroneous.Stewart v. Stewart, Ala.Civ.App., 341 So.2d 490 (1977); Hamakerv. Hamaker, 57 Ala. App. 333, 328 So.2d 588, cert. denied295 Ala. 404, 328 So.2d 594 (1976). In this instance, the record discloses no error by the trial court.
Rather than requiring the husband to sell the homeplace, the husband was allowed to continue to reside there along with one daughter who had attained majority. The husband was providing some financial assistance to this daughter until she was prepared to go out on her own. The wife returned to Denver of her own volition. That she chose to do so did not, we think, require the trial court to order the home to be sold and the proceeds divided between the parties.
Likewise, the trial court allowed the husband to retain all of the investment and business property. We cannot state as a matter of law that the trial court should have ordered the husband to sell the property immediately subsequent to the divorce in order that the wife could be awarded more cash at that time. Requiring the husband to sell his business stock or land would have served no useful purpose but would have deprived the husband of his means of livelihood. Additionally, to require mass liquidation of his investment properties might well have resulted in adverse tax and other consequences so as to seriously impair the husband's future earning power and, consequently, his continued ability to meet his periodic alimony and child support obligations.
One reasonable interpretation of the evidence establishes the net worth of the husband's property at $264,000. The award of $80,000 to the wife is approximately 30% of this amount. The division of the property in a divorce case does not have to be equal, but must be equitable. Dickson, supra. Under the circumstances of this case, we deem the division equitable. However, we do find that the wife is entitled to some protection to insure payment of the aforesaid $80,000. To afford such protection, the trial court should order, in the event of a sale of the homeplace, a lien against the said homeplace.
The wife's attorney has requested a fee for representing the wife in this appeal. A fee of $300 is hereby awarded.
AFFIRMED IN PART; REVERSED IN PART FOR ENTRY OF A JUDGMENT NOT INCONSISTENT WITH THIS OPINION; AND REMANDED.
WRIGHT, P.J., and BRADLEY, J., concur. *Page 56