Chief Judge Desmond.
The proceeding was brought by Helen K. Boyd, a teacher (or former teacher) in a central school district in Indian Lake, Hamilton County, N. Y., against the district school board to require the board to restore petitioner to her position on the payroll with full restoration of tenure rights, and with back pay. This appeal is by the board from a unanimous Appellate Division order which directed judgment for *231 petitioner for back pay in the amount of a little over $18,000. The Appellate Division determination followed an earlier interlocutory order of the same court which had modified a Special Term order by directing that petitioner be restored to her teaching position and by remitting the proceeding to Special Term for determination of the amount of salary to be paid to her. A Referee had originally reported, and Special Term had confirmed, that an agreement made by petitioner with the board waived her right to tenure, but the Appellate Division (in its first determination) held that the agreement between petitioner and the board was illegal for various reasons and then remitted the matter to Special Term to fix salary, which Special Term did, followed by the Appellate Division’s affirmance.
Primarily, the controversy is as to the validity of the agreement whereby the local board attempted to get rid of this tenured teacher without charges or hearing by paying her a year’s salary for not teaching. Such an agreement is in direct violation both of the applicable teacher-tenure statute law (Education Law, § 3013) and of the constitutional ban against gifts of public moneys (N. Y. Const., art. VIII, § 1).
The narrative begins in October, 1956. A number of parents of pupils in petitioner’s fourth grade class came before the board informally with petitioner not present or represented and made sundry complaints against the way in which petitioner was conducting her classes and as to the alleged effects on the children. At this time petitioner bad been a public school teacher for more than 35 years, had been employed by this Indian Lake school district for 8 years, unquestionably had tenure and was eligible for retirement (Education Law, § 510) but had renewed her contract for the school year 1956-1957. The day after the parents made their representations to the board the president of the board talked to petitioner in the office of the principal, told petitioner of the complaints and said that the school board would pay her salary until the end of the term if she would resign. She expressed reluctance to do so and there was discussion as to her right to a hearing on any charges against her. The president told her that she was entitled to a hearing and she said that she wished one. At the end of this parley the president told petitioner that she was relieved from duty—at least he told her that she was not to teach *232 any more and when she went to her classroom she found that another teacher had been installed there. On the evening of the same day petitioner talked with a County Judge who was a practicing lawyer also but who apparently advised with her as a friend. The Judge testified without dispute that after discussions with petitioner he talked to the supervising principal and was told by the latter that he felt he should have the right “ to hire and fire teachers as he saw fit.” Section 3013 of the Education Law, as we shall see, denies him that right.
On October 17,1956 there was a meeting of the board at which petitioner was not present. The Judge was there and spoke on behalf of petitioner although he had not been retained as her attorney. He had previously acted on various occasions as attorney for the school board. At this meeting there was a discussion as to a settlement of the matter and the Referee found that the agreement or purported agreement, to which we will refer, was first proposed by the Judge although there is no proof that he was directly authorized in that respect by petitioner. The substance of the discussion between the Judge and the board at the meeting was that the Judge told the board that the least they could do to remedy the wrong done to petitioner was to pay her till the end of the year and give her “ a good letter of recommendation ”. The Judge .said in words or substance that such an arrangement would be acceptable to petitioner. The school board authorized this arrangement and petitioner never taught at the school again. Her salary was paid for the school year 1956-1957. She has never resigned nor have charges ever been filed against her or tried.
In February, 1957 the supervising principal sent to the Judge a letter as follows:
‘ ‘ To whom it may concern: —
Helen Kathan Boyd, after nine years as a teacher in this school, is tendering her resignation to take effect at the close of the present school year.
While a member of the faculty Mrs. Boyd had taught a combined third and fourth grade and in more recent years she has taught a single grade — the fourth.
She is a graduate of Plattsburgh State Teachers College and is a fully qualified teacher in the elementary school.
*233 Before coming to this school Mrs. Boyd had many years of grade teaching experience in other schools in this state.
Milton S. Pope, Principal.”
The Appellate Division, among other things, found that this was not ‘1 a letter of recommendation ’ ’ at all since it merely recited facts of public record as to her teaching experience and status.
The main issue, of course, is as to the validity of the alleged agreement whereby petitioner was to give up her position and tenure in return for payment of a year’s salary. The Appellate Division said that such an agreement was contrary to the statute (Education Law, § 3013) which says that teachers on tenure shall not be removed except for specified causes after a hearing on written charges. It is clear on this record that petitioner never voluntarily quit her job but was told by the board president to stop teaching and not to return to her classroom. It is unquestionably a violation of the statute and of tenure rights to remove, without charges and hearing, a teacher who has tenure. Of course, a teacher like any other employee may resign but the assertion here is not that petitioner resigned but that for a consideration she waived her right to a hearing. To validate such a holding of waiver would be contrary to the strong public policy of this State expressed in the tenure statutes. The purpose of the tenure law is “to give security to competent members of the educational system in the positions to which they have been appointed ” (Matter of Monan v. Board of Educ., 280 App. Div. 14, 18; Donahoo v. Board of Educ., 413 Ill. 422, 427). The statutory tenure terms can be changed by the Legislature but never by a board of education (Lapolla v. Board of Educ., 172 Misc. 364, affd. 258 App. Div. 781, affd. 282 N. Y. 674; Matter of O’Connor v. Emerson, 196 App. Div. 807). A dismissal without hearing, charges and findings is illegal (Hughes v. Board of Educ., 249 App. Div. 158). If all this can be nullified by a dismissal without charges, with or without pay or bonus, the protection of teachers has been removed. For the courts to validate a “ waiver ” (see, illustratively, as to public policy, Civil Service Law, § 96) by a teacher of such rights would be violative of the spirit and public purpose of the act which' protects the school system by giving permanency to the jobs of *234 experienced teachers. This school board in order to back out of an unpleasant situation tried to create its own public policy by destroying tenure rights and giving away public money.
The Appellate Division’s second ground for invalidity is the unconstitutionality of an agreement ‘ ‘ under which public money would be paid without services rendered on condition that charges be withheld and the teacher resign ”. This, too, is clearly correct. Paying a public officer or employee for services not rendered is an unconstitutional gift of public moneys (N. Y. Const., art. VIII, § 1). The charges should either have been dropped or tried out pursuant to statute. If school board members can avoid embarrassment by paying a year’s salary to get rid of a teacher, then a board can pay such salary for 5 years or for life. Where would board members ever get such a power?
A third or minor ground for the Appellate Division’s invalidation of this agreement was that the board never in fact complied with the agreement because it did not give petitioner a letter of recommendation but merely an official statement as to the duration of her teaching career and the fact that she had the required qualifications. This, too, is correct. The letter, quoted above, contained no words of “recommendation” (see McDonald v. Illinois Cent. R. R. Co., 187 Ill. 529).
The board argues that petitioner is in effect estopped from questioning the validity of the contract because she has accepted its benefits. But Mrs. Boyd got no benefits. Furthermore, the Appellate Division gave another answer to the estoppel theory by expressing a doubt as to whether estoppel can be invoked where such a strong public policy appears. Beyond this, said the Appellate Division correctly, the school board did not itself perform the contract. It gave petitioner not a letter of “ recommendation ’ ’ but a mere statement as to the length of her teaching service, etc. Such a recommendation was of major importance to petitioner who had been a teacher for many years and would need a new job.
There is no substance in the argument of appellants that petitioner, although she has never been found guilty of anything (see Education Law, § 3013), cannot have relief unless she returns the salary paid to her. She was told by the board president to stop teaching and she did so. After that she was under no obligation to present herself every morning for work since *235 she had a valid permanent contract of employment (Matter of McMaster v. Owen, 275 App. Div. 506, 508; see School City of Elwood v. State ex rel. Griffin, 203 Ind. 626, 634; Steinson v. Board of Educ., 165 N. Y. 431, 434). Presumably she would have appeared and gone to work had she been summoned back. At the beginning of the next (1957-1958) school year she did, without success, demand from the board restoration to her teaching job.
The order should be affirmed, with costs.